## Scranton School District, Appellant, v. Smith.

Argued January 29, 1935. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*Lee P. Stark,* with him *Charles P. O'Malley* and *J.
Julius Levy,* for appellant in No. 189 and for appellee in
No. 203.

*John P. Kelly* and *Clarence Balentine,* with them
*David J. Reedy* and *Edward J. Kelly,* for appellee in
No. 189 and for appellant in No. 203.

OPINION BY MR. JUSTICE SCHAFFER, May 13, 1935:

This is a bill in equity brought by the School District
of the City of Scranton against Jacob Smith, praying
that he be decreed to be the agent and trustee of plain-

tiff in collecting delinquent school taxes for the years 1925 to 1929 inclusive, and that he be directed to file an account of the money he had received and to pay it to plaintiff. The court below entered a decree awarding to the school district the sum of $88,342.38, which it found to be the amount of plaintiff's funds in defendant's hands. The court also directed a further accounting by defendant. The chancellor refused to find that defendant was the agent or trustee of plaintiff. From this decree both parties have appealed. The two appeals will be disposed of in this opinion.

By resolutions duly passed by the school board, it authorized the bringing of suits in assumpsit before an alderman for the recovery of delinquent taxes for the years named. These resolutions were enacted under section 503 of the School Code of May 18, 1911, P. L. 309, 332, 24 P. S., section 384, which provides that school districts may maintain before an alderman an action of assumpsit for unpaid school taxes. In pursuance of these resolutions, Grace Pettigrew, who had been designated by the board as collector of delinquent taxes, delivered to the defendant, who was an alderman of the City of Scranton, lists of delinquents for each of the years, and he undertook to collect from the persons named on the lists. Some of the amounts he received he paid over to the school district. During the months of January and February, 1932, he delivered to the collector of delinquent taxes three checks aggregating $48,189.41. Accompanying them was a list of the names of the taxpayers from whom he received the money, the amounts and dates when paid. When the checks were presented to the bank on which they were drawn, they were dishonored and returned "not sufficient funds." Subsequently, the defendant called on certain members of the school board and admitted that he had used for his own purposes the money he had received, and asked for an extension of time to make the checks good. This request was refused, and shortly thereafter the defend-

ant was arrested on charges of embezzlement and fraudulent conversion of the tax money he had received. To indictments therefor he entered pleas of nolle contendere, upon which sentence was entered. The criminal proceedings are now pending on appeal.

After the dishonoring of defendant's checks and the discovering of his other shortages, this bill was filed to obtain an accounting as to the money which he had received and not turned over. The school district claims, in all, $131,931.16, and complains that the court below erred in not awarding it that sum. The chancellor, in his findings of fact, adopted the figures of plaintiff's accountant, and in his fiftieth finding expressly found that "Jacob Smith, the defendant, did not deny that during the years 1925 to 1929 inclusive, he collected and failed to pay over to the plaintiff the net sum of one hundred thirty-one thousand nine hundred thirty-one dollars and sixteen cents, delinquent taxes." However, at the end of his discussion the trial judge stated that "The defendant requested us to find as a fact that there are eighty-eight thousand, three hundred forty-two dollars and thirty-eight cents due from this defendant to the plaintiff and this we so find without prejudice, however, to the items in dispute, but which, as we view it, cannot under the state of the evidence in this case be at this time determined, but must be the subject of an accounting." Accordingly the decree nisi, which was made absolute by the court in banc, was for this sum.

This was error. The parties both agree that the evidence as to defendant's collections was fully presented; without recounting the maze of figures which it contains, our reading of the record confirms their position that there is no need for a further accounting. Inasmuch as the chancellor found on competent evidence that defendant had collected and failed to account for $131,931.16, we are at a loss to understand why his liability was not fixed at this figure. The decree must be modified to remove this inconsistency.

We do not understand defendant to controvert in any way the fact that he collected the above sum in delinquent taxes. His contention, as set forth in his answer to the bill, is that he is entitled to a set-off against the taxes collected to the extent of $93,394, this sum representing costs of $9.80 in each of 9,530 suits in assumpsit which he alleges he had maintained in plaintiff's name against delinquent taxpayers, and in which judgments had been entered by default, which judgments he has been unable to collect.* He admits that he has in his hands taxes collected for plaintiff in the sum of $88,-342.38, and, as his alleged set-off is greater in amount, he asks a decree in his favor for the difference.

Our reading of the record has brought us to the conclusion that defendant's claim of set-off is an afterthought. As the chancellor found, for eighteen years defendant had acted for plaintiff in the collection of delinquent taxes, and never until he was arrested did he make any claim for costs of suit. When he gave the checks which were dishonored he did not claim the school district owed him anything, nor did he make such claim when he later asked the school board for time to make the checks good. Subsequently, and before the in-

---

* On the last day of the trial and when plaintiff had completed its proofs, defendant filed an amendment to his answer, which was allowed by the court, claiming an additional set off of $107,857.12, as costs, $1.12 each, of issuing and serving 96,301 warrants in the collection of delinquent personal school taxes, making a total set-off claim of $201,251.12. This claim of course could not be sustained; defendant, as justice of the peace, not a tax collector, had no authority to issue such warrants: Hilbish v. Hower, 58 Pa. 93; Ross v. Hudson, 6 Pa. Superior Ct. 552. Moreover, defendant had agreed in writing to collect all personal taxes on a commission of thirty per cent of the sums received, the commission to be his sole remuneration, and this arrangement was carried out, defendant deducting his commission before remitting to plaintiff the taxes collected. The court below rejected this claim and on this appeal defendant has abandoned it. The boldness of the claim is apparent when it is considered that of these personal taxes defendant collected only $9,590, while his bill for costs is over eleven times that amount.

stant proceeding was begun, defendant filed a petition for a declaratory judgment on the accounts between plaintiff and himself; in this he admitted owing plaintiff $29,285.21 and tendered that sum to it. Moreover, the names of approximately three thousand of the persons against whom he entered suit had been stricken from the delinquent list of the school district, and the evidence shows that this list and that furnished defendant were identical. It was further proved that these names were stricken from both lists before a copy was delivered to defendant. Many of the suits for which defendant claims costs were for more than $300; over these, as an alderman, he had no jurisdiction. The facts indicate that defendant's claim of having maintained actions in assumpsit against delinquent taxpayers is fictitious, and we so conclude.

It is true that the list of delinquent taxpayers was delivered to defendant by the collector of delinquent taxes, with a copy of the resolution of the school board authorizing the collector to initiate actions in assumpsit before an alderman. But the evidence shows that even if such actions were begun, the entry of judgment by default was wholly without authority of law. To be entitled to judgment by default in such actions the plaintiff or its agent must file, before the issuance of the summons, an affidavit stating the amount believed to be due from defendant: Act of July 7, 1879, P. L. 194, 42 P. S., section 451. Miss Pettigrew, who represented plaintiff in its dealings with defendant, testified that she never appeared or was sworn in any such action for taxes. In addition, the Act of March 20, 1810, P. L. 208, 42 P. S., section 471, permits the entry of judgment by default by a justice of the peace only "upon due proof, by oath or affirmation, of the service of the summons." The testimony of Mrs. Sippel, who was in charge of defendant's office, shows clearly that judgments were entered on defendant's books as a matter of course, if the parties defendant did not appear before the time fixed for hearing.

Defendant invokes the principle that the records of a justice of the peace cannot be contradicted (Holly v. Travis, 267 Pa. 136), but that rule has no application to such a situation as that with which we are dealing, where the justice is claiming costs from a litigant before him and the very existence of the litigation is disputed.

The true situation, as we understand it from the record, is that when plaintiff, through Miss Pettigrew, instructed defendant to collect its delinquent taxes, defendant proceeded to issue his process to bring the taxpayers before him, but did so without regard to the formalities of actually bringing suit. If then the delinquent appeared, he was charged not only with his taxes but with the costs of the fictitious suit, which costs defendant kept as compensation for his collection services. The taxes were then remitted to plaintiff, without the deduction of a commission. If, on the other hand, the delinquent taxpayer did not appear when summoned to defendant's office, defendant made no charge for costs against plaintiff—that is, not until the present litigation began—because no suit had ever actually been maintained. Our conclusion as to this loose and informal manner of collection by the pretended use of defendant's process was reinforced by offers in evidence made by plaintiff, which we think should have been received, by which plaintiff proposed to show that defendant's records recited service upon persons long dead and returns of nulla bona upon large corporations. Of course, for transactions such as these defendant cannot be entitled to costs.

Our conclusions are:

That defendant shall pay to the plaintiff the sum of $131,931.16.

That no further accounting is necessary.

That the defendant shall pay the costs, including the costs on both appeals.

That the court below shall enter a decree in accord with these conclusions.